### In re MAMIE CONTI GOWNS, Inc.
### No. 62275.

District Court, S. D. New York.
June 11, 1935.

Reuben Hirsch, of New York City, for debtor.

Emil Schlesinger, of New York City, for International Ladies' Garment Workers' Union and Joint Board of Dress and Waistmakers' Union of Greater New York.

HULBERT, District Judge.

The debtor filed a petition for relief under section 77B of the Bankruptcy Act (11

USCA § 207), on May 7, 1935, and an order was thereupon entered approving the petition as conforming to the statute and having been filed in good faith. The petition showed assets of $63,390.39 and liabilities of $31,063.11, but alleged that relief was necessary because the debtor is unable to meet its debts as they mature and unless its business is continued uninterrupted, great losses will occur.

Immediately thereafter, an ex parte application was made to the court by petition of the debtor to discard and declare no longer binding a contract between the Affiliated Dress Manufacturers, Inc. (of which the debtor is a member), and the International Ladies' Garment Workers' Union and the Joint Board of Dress and Waistmakers' Union of Greater New York. The court having required that notice be given, a notice of motion was served stating that the application was made pursuant to subdivision (m) of section 77B (11 USCA § 207, subd. (m). An answer having been interposed by the president of the International Union and the secretary-treasurer of the Joint Board Union, oral argument was had and elaborate briefs were thereafter submitted by both counsel.

It appears that the debtor is now engaged and has been for some time past in the manufacture and sale of dresses in the city of New York and is a member of the Affiliated Dress Manufacturers, Inc., which is an association of manufacturers who make their products on their own premises for sale at retail. All of its employees are members either of the International Ladies' Garment Workers' Union or the Joint Board of Dress and Waistmakers' Union of Greater New York.

The agreement or contract in question was made on March 1, 1932, and modified on August 19, 1933, and again on March 1, 1934, and is, by its terms, to expire January 31, 1936. It followed a period of severe labor agitation in the dress industry, including several strikes, and was made "to secure uninterrupted operation and general stabilization of the industry."

It provided, among other things, for standards of employment, specified wage rates, the establishment of the "closed shop," and appointed an impartial chairman to sit with one member of each party organization as a trial board to decide any dispute. The debtor concedes that since the adoption of the agreement, both Mamie Conti Gowns, Inc., and its employees have operated under and subject to and within the scope of the provisions of said contract.

Subdivision (m) of section 77B (11 USCA § 207 (m), pursuant to which this petition was brought, provides, "No judge, debtor, or trustee acting under this section shall require any person seeking employment on the property under the jurisdiction of the judge to sign any contract or agreement promising to join or to refuse to join a labor organization; and if such contract has been enforced on the property prior to the property coming under the jurisdiction of said judge, then the judge, debtor, or trustee, as soon as the matter is called to his attention, shall notify the employees by an appropriate order that said contract has been discarded and is no longer binding on them in any way."

Subdivision (m) should be read in conjunction with subdivision (l) (11 USCA § 207 (l) which provides, "No judge, debtor, or trustee acting under this section shall deny or in any way question the right of employees on the property under the jurisdiction of the judge, to join the labor organization of their choice, and it shall be unlawful for any judge, debtor, or trustee to interfere in any way with the organization of employees, or to use funds under such jurisdiction, in maintaining so-called company unions, or to coerce employees in an effort to induce them to join or remain members of such company unions."

The last sentence of subdivision (m), which provides "the judge * * * shall notify the employees * * * that said contract has been discarded and is no longer *binding on them* in any way." (Italics mine), satisfies me that one or more of the employees must seek the relief provided for under subdivisions (l) and (m). In this case, not only does the *debtor* seek the relief, but thirty-eight of its employees (comprising, I assume, all or substantially all of those now employed) submit affidavits in opposition to the application. *Not one* seeks relief hereunder.

On the oral argument, counsel for the debtor stated that, even if the court found that the application was not properly brought under subdivision (m), it should grant the relief sought under subdivision (c), cl. (5), 11 USCA § 207 (c) (5), which provides, "the judge * * * may direct

480

the rejection of contracts of the debtor executory in whole or in part." He devotes a substantial part of his brief to the latter subdivision.

Laying aside the technical objection that subdivision (c), cl. (5), was not mentioned in the moving papers and considering the question under that subdivision, pursuant to the omnibus clause of the notice of motion, since both counsel had a thorough opportunity to brief it, let us see what facts are presented to influence the court's discretion.

The debtor asserts that it has had to seek relief under section 77B because its labor expenses, pursuant to the contract, were out of all proportion to its volume of business and that no feasible plan of reorganization providing for a fair prospect of profit in the future can be put forth as long as the contract remains in force. No facts or comparative figures are set forth in affidavit form to substantiate this.

The unions, on the other hand, contend that the agreement is an eminently fair and equitable one for both employer and employee and that its enforcement has alone produced the only stable condition the dress industry has known in many years. It also contends that, if the relief sought by the debtor is granted, the debtor company will, by seeking a reorganization, obtain an unwarranted advantage over its competitors and this will augment the number of reorganizations with the purpose of abrogating labor contracts and so, finally, result in chaos in the industry.

It is significant that the contract in question *itself* provides for reorganization of employer members to obtain reduction of working force and that *this debtor* made such an application in July, 1934, on the ground of permanent curtailment of business. The application was denied on August 1, 1934.

Considering the disproportion of assets over liabilities as stated in the debtor's petition, I am not wholly satisfied that this entire proceeding under section 77B was begun to promulgate and consummate a plan of reorganization, and not to discard, by order of a court, this particular contract.

Viewing the results of an opposite conclusion broadly both as to employees in the dress industry and employers, competitors of the debtor and particularly its associated members of the Allied Manufacturers Association, and on all the facts before me relating to this individual manufacturer and its employees, I will deny the petition.

Settle order on two days' notice.